# United States District Court
# Northern District of Indiana
# Hammond Division

| | | |
|---|---|---|
| ROSE ROMANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:06-CV-342 JVB |
| | ) | |
| CITY OF HAMMOND POLICE DEPARTMENT, | ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION & ORDER**

Rose Romano was a police officer with the City of Hammond Police Department. After ten years of service, she was diagnosed with idiopathic hypersomnia, a condition that causes excessive daytime sleepiness. In October 2005, she was forced onto a disability pension after she had missed significant amounts of work because of her disability. She filed this case on October 11, 2006. In her complaint, she alleged that the Defendant, City of Hammond Police Department, had violated the Americans with Disabilities Act by discriminating against her and failing to reasonably accommodate her sleeping disorders. Defendant moved for summary judgment on September 1, 2010. Defendant claims that Plaintiff has failed to present evidence that she is a qualified individual under the Americans with Disabilities Act.

**A. Background Facts**

Plaintiff Romano was hired by the Hammond Police Department in 1985, starting out as a uniform patrol officer. She nearly fell asleep while driving once in 1991. In 1995, Romano worked in "community policing," which involved riding a bicycle on patrol, when she began to

experience difficulty remaining alert. She underwent testing at the Mayo Clinic and was diagnosed with idiopathic hypersomnia, a neurological disorder of unknown origin that causes excessive daytime sleepiness. Her doctor at the time, Dr. Michael Silber, prescribed her Desoxyn, an amphetamine drug, to help her remain alert during the day. He also recommended that Romano should work straight day shifts and sleep until 7:00 a.m.

In 1999, Romano was transferred to the Warrant Division of the Hammond City Jail, where she served warrants, arrested suspects, and transported prisoners. She was assigned to a day shift, which generally involved working between 7:00 a.m. and 3:00 p.m.

From January 2001 to June 2003, Romano worked in the Department's Support Services division, where she entered information into computers from handwritten citations, retrieved and copied records, and fingerprinted handgun permit applicants. She was again assigned to a day shift. During her time in Support Services, Romano missed 265 days of work because of a variety of health related issues.

In 2003, Romano began to work in the jail's booking division. She worked from 6:00 a.m. to 2:00 p.m. Around the same time, she began seeing Dr. Larry Salberg, a neurologist, for treatment of her idiopathic hypersomnia. He diagnosed her with sleep apnea, which complicated the treatment of her idiopathic hypersomnia. He increased her dosage of Desoxyn to 20 milligrams four times per day, the maximum he was comfortable prescribing. Romano was required to miss work for neurologic testing. Romano missed a total of 149 days of work in 2003, although about 120 were because of endometriosis and a hysterectomy, not her sleep disorders.

By early 2004, Romano told Dr. Salberg that she was having difficulty with being alert

during the day. On January 21, 2004, Dr. Salberg wrote to Lieutenant Richard Hoyda, stating that treating Romano was difficult, that her ability to stay awake could change every day, and that she should remain off work through at least March 10, 2004. On March 11, 2004, Chief of Police Brian Miller wrote to Romano and asked her to provide a letter from her physician explaining whether she could return to work. Assistant Chief Ezekiel Hinojosa spoke with Dr. Salberg on March 30, 2004. Dr. Salberg told Hinojosa that Romano should not perform duties involving the use of weapons, driving, or chasing criminals. Hinojosa has also stated that Dr. Salberg told him Romano could not perform other types of police work, but Dr. Salberg denies this.

Chief Miller talked with Dr. Salberg in April 2004 about the hours Romano should work. Miller stated that Dr. Salberg told him that Romano should not wake up before 8:00 a.m. and that a shift from 1:00 to 9:00 p.m. would be a satisfactory accommodation. Dr. Salberg claims he said that Romano could start work between 6:00 and 8:00 a.m. and that he said the 1:00 to 9:00 shift would disrupt her sleep cycle. When Romano returned to work in May 2004, she was assigned to the day shift at City Hall, which lasts from 9:00 a.m. to 5:00 p.m. Shortly afterwards, she was transferred to the afternoon shift in Booking, which lasts from 1:00 to 9:00 p.m., despite requesting that she remain on a day shift. The record does not indicate why she was transferred. Her supervisor on the afternoon Booking shift was Sergeant Lipkovich, who, Romano claims, constantly harassed her because of her sleep disorders. Romano missed 109 days of work in 2004.

Between January 1, 2005 and April 21, 2005, Romano missed an additional 36 days of work. In late May, Dr. Salberg wrote a note to Chief Miller indicating that Romano was at that

time totally disabled from any kind of work because of her idiopathic hypersomnia. The Hammond Police Department would not allow her to return to work until she provided a detailed letter of her condition, which required comprehensive testing. Because of Dr. Salberg's letter, Captain John Doughty, who was acting Chief of Police, wrote to the Hammond Police Pension Fund Board on June 1 and requested a hearing on Romano's eligibility for transfer to a disability pension.

Romano underwent testing at the Rush Medical Center in July 2005. This testing revealed that Romano's CPAP machine, used to treat her sleep apnea, had been on the wrong setting. The CPAP machine was adjusted, and Romano's fatigue improved. Dr. Salberg released her to return to work on October 10, 2005, but only on a straight day shift because he believed the afternoon shift had aggravated her condition.

On October 26, 2005, the Hammond Police Pension Board held a hearing on Romano's eligibility for transfer to a disability pension. Romano was represented by counsel. At the hearing, Dr. Frank Messana, an occupational medicine physician who had met with Romano twice to make an independent medical evaluation, testified that Romano's condition had not been successfully managed despite being on the highest allowable dose of Desoxyn. He expressed the opinion that Romano's condition would prevent her from occupying any position that required her to remain alert for any length of time. He also testified that she could not perform the essential functions of her job and would pose a serious safety risk to herself and others if she were allowed to perform police duties. On November 17, 2005, the Hammond Police Pension Fund Board determined that Plaintiff was unable to work because of her medical condition. Romano has been receiving pension disability payments since February 2006.

The Hammond Police Department has an unlimited sick leave policy.

**B. Legal Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. Rule 56© further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628.. A court's role is not to evaluate

the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

**D. Discussion**

**(1)** *Defendant's Motion to Strike*

Defendants moved to strike the Affidavit of Dr. Larry Salberg, claiming that it contradicted his deposition testimony. The Court has determined that it does not, and will not strike it.

**(2)** *Plaintiff's Motion to Strike*

Plaintiff moved to strike the Defendant's argument that Romano was not disabled from the Defendant's Reply to the Plaintiff's Response to the Motion for Summary Judgment. However, Defendant has never argued that Plaintiff is not disabled.

**(3)** *Motion for Summary Judgment*

The Americans with Disabilities Act provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2006) (prior to 2008 amendments). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such

individual holds or desires." 42 U.S.C. § 12111 (2006) (prior to 2008 amendments). Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position . . . and other similar accommodations for individuals with disabilities." *Id*. However, an employer only needs to provide some reasonable accommodation, not the one the employee requests or prefers. *Mobley v. Allstate Ins. Co.* 531 F.3d 539, 546 (7th Cir. 2008) (citing *Gile v. United Airlines*, 95 F.3d 492, 499 (7th Cir. 1996)). An employer does not need to make an accommodation if it can show that the accommodation would impose an "undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A) (2006) (prior to 2008 amendments).

The Hammond Police Department claims that attendance is an essential function fo Romano's job and her excessive absenteeism rendered her unable to do her job. Romano claims that attendance is not required because the Hammond Police Department has an unlimited sick leave policy. The Hammond Police Department also claims that the 1:00 p.m. to 9:00 p.m. shift was a reasonable accommodation of Romano because it was based on the advice of her doctor. Romano claims it was not a reasonable accommodation and her doctor told them that it would not be good for someone with her condition. Finally, the Hammond Police Department claims, based on the opinion of Dr. Messana, that Romano was completely unable to work when she was forced onto a disability pension. Romano claims that she was not unable to work and that her doctor had in fact released her to return to work shortly before the pension board hearing.

Because of the Hammond Police Department's unlimited sick leave policy, there is an issue of fact as to whether Plaintiff's absenteeism rendered her unable to fulfill the requirements of her job at the Hammond Police Department. There is also an issue of fact as to whether the

7

Hammond Police Department reasonably accommodated Plaintiff when it placed her on the 1:00 p.m. to 9:00 p.m. shift. There is a further issue of fact as to whether she was able to work when she was forced onto a disability pension because of the conflicting opinions of Dr. Salberg and Dr. Messana.

**D. Conclusion**

The Defendant's Motion for Summary Judgment [DE 71], the Defendant's Motion to Strike [DE 92], and the Plaintiff's Motion to Strike [DE 100] are DENIED.

SO ORDERED on December 21, 2010.

                                                              s/ Joseph S. Van Bokkelen
                                                              Joseph S. Van Bokkelen
                                                              United States District Judge